1   Ara Sahelian, Esq., [CBN 169257]
2   SAHELIAN LAW OFFICES
3   23276 South Pointe Drive, Suite 216
    Laguna Hills, CA 92653
4   949. 859. 9200
5   e-mail: sahelianlaw@me.com
    Attorneys for Naim Mtanios Younan; Naim Mtanios Younan as trustee;
6   Nofa Younan; Nofa Younan as trustee
7
8
9               UNITED STATES DISTRICT COURT
10              CENTRAL DISTRICT OF CALIFORNIA
                   (Eastern Division - Riverside)
11
12
13
14
15  James Rutherford
16          Plaintiff,
         vs.                         CASE NO.: 5:20-cv-01204-MWF-SP
17  Naim Mtanios Younan; Naim
18  Mtanios Younan as trustee; Nofa  The Honorable Michael W. Fitzgerald
    Younan; Nofa Younan as trustees
19  of The Naim and Nofa Younan      POINTS AND AUTHORITIES TO
20  Living Trust,                    MOTION TO DISMISS [FRCP 12(b)1]
            Defendants.
21
22                                   Hearing Date: September 21, 2020
                                     Time: 10:00 AM
23
24
25  .
26
27
28

POINTS AND AUTHORITIES TO MOTION TO DISMISS [FRCP 12(b)1]Page 1 -

**POINTS AND AUTHORITIES TO**
**MOTION TO DISMISS [FRCP 12(b)1]**

## I. INTRODUCTION

This Motion is being made on behalf of Naim Mtanios Younan; Naim Mtanios Younan as trustee; Nofa Younan; Nofa Younan as trustee (hereinafter also "Defendants"). On Friday, June 12, 2020, plaintiff James Rutherford (hereinafter also "Plaintiff"), filed the instant action against Defendants, in relation to Norm's Liquor located at 16286 Foothill Blvd., Fontana (hereinafter also, "Site"), asserting claims for "."

**Compliance with Local Rule 7-3:** This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 7, 2020 in response to a letter dispatched to Plaintiff's attorney requesting a conference. The letter is dated July 27, 2020 and marked Exhibit G. (Declaration of counsel, ¶3).

## II. DISCUSSION

In April, 2019, the People of the State of California filed an action against James Rutherford and his attorneys (see Exhibit H, Case Number RIC 1902577, filed in the County of Riverside) with allegations that confirm what this attorney has seen firsthand. Beginning with paragraph 28

of the Complaint, The People allege, "Rutherford has been observed on multiple occasions, walking and ambulating without difficulty. Rutherford has been observed holding and/or using a cane, however Rutherford's use of a cane appears to be an accessory to his daily activities, rather than a device Rutherford relies upon to commence and complete his daily activities." ¶ 28. "As an example, Rutherford was observed walking from his vehicle in the valet queue of a particular business to the entrance of the business without his cane, then walking out of the business several hours later. On another occasion, Rutherford was observed walking into the same business with his cane, then leaving several hours later without his cane." ¶ 29. "On another occasion, Rutherford was observed leaving the MacArthur Center (The former location of Manning law), holding his cane (not relying on it) and walking down in the middle of the flight upstairs to his vehicle in the parking lot. On that occasion, it was observed that Rutherford did not use the handicap lift near the stairwell, Rutherford did not use the hand rails on either side of the flight of stairs, and Rutherford did not park in a handicapped designated parking space." ¶ 32.

Rutherford, in the within case, complains of a minor variation in the

slope to an access aisle to a handicap parking space, and demands $4,000 per visit in statutory penalties. A motion to dismiss granted is not a motion for summary judgment, and we must accept Rutherford's allegations as true. However, Defendants are entitled to an explanation as to how Rutherford has been denied full and equal access.

### a. The Complaint Is Jurisdictionally Defective and Subject to Dismissal under Federal Rule of Civil Procedure 12(b)(1)

Article III standing must be demonstrated at the successive stages of the litigation. "[F]ederal courts are required *sua sponte* to examine jurisdictional issues such as standing." *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2002); *United States v. Hays*, 515 U.S. 737, 742, (1995). The existence of Article III standing is not subject to waiver. *Hays, 515 U.S., at* 742. It must be demonstrated "at the successive stages of the litigation," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, and "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action," Fed. R. Civ. P. 12(h)(3). "[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review.'" *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541(1986).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Supreme Court has developed a three-part test for standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 119 L. Ed. 2d 351, 112 S. Ct. 2130 (1992). First, the plaintiff must have suffered an "injury in fact." This consists of an invasion of a legally--protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct serving as the basis of the lawsuit. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. The plaintiff invoking federal jurisdiction has the burden of satisfying these elements. *Id*. at 561.

The Supreme Court in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), held that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. Rather, "[A] party seeking review must allege facts showing that he is himself adversely affected." *Sierra Club v. Morton*, 405 U.S. 727, 740, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972).

As to harm, it is "particularized" if it "affect[s] the plaintiff in a personal

**POINTS AND AUTHORITIES TO MOTION TO DISMISS [FRCP 12(b)1]**
**Page 5 -**

1

2 and individual way." *Lujan*, 504 U.S. at 560, n.1, and the injury must be

3

4 "concrete" rather than being only "abstract." *Spokeo, at* 1548.

5     **b. The Standard for Pleading ADA Cases Is Expressed in *Chapman***

6

7 ***v. Pier One* (9th Cir., 2011, en banc)*. Chapman* Holds that an ADA**

8 **Plaintiff Must Plead an Injury-In- fact by Connecting the Alleged**

9

10 **Disability to an Alleged Barrier; In Other Words, the Harm Alleged**

11 **Must Affect the Plaintiff "in a Personal and Individual Way."**

12     An en banc panel met in 2011 to resolve intra-circuit conflicts on issues

13

14 pertinent to the private enforcement of the ADA in Chapman v. Pier 1 Imps.

15 (U.S.), Inc., 631 F.3d 939, 944 (9th Cir. 2011). Their decision established

16

17 the pleading standards as they apply to litigation under the ADA today. The

18 Ninth Circuit noted its purpose in analyzing *Chapman* en banc: "We vacated

19

20 the panel's decision after a majority of our court's non-recused active judges

21 voted to rehear the appeal en banc to examine the Article III standing

22

23 doctrine in the context of actions for injunctive relief under the ADA." 631

24 F.3d at 944.

25     Among the issues the Court addressed was whether Chapman had

26

27 sufficiently plead an injury-in-fact to have Article III standing under the

28

2067

case-or-controversy principles established by the Supreme Court. 631 F.3d at 954-55. In doing so, the *Chapman* court analyzed the established injury-in-fact requirements set out by the Supreme Court in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, as they had been applied to ADA cases.

The en banc panel in *Chapman* concluded that both the District Court, and the previous three-judge panel reviewing the case, had missed the fact that the complaint was jurisdictionally defective. (see EXHIBIT A for a copy of the complaint filed in 2004). Chapman had not alleged *how he* was personally affected by the barriers, *how* they related to his specific disability, or if they related to his disability at all. Further, the list of purported barriers did not indicate whether or *how* each deterred Chapman from returning to Pier 1. As a consequence, the *Chapman* court determined that Chapman had failed to properly averan injury-in- fact, or imminent harm, and "the district court should have dismissed" the ADA claims. 631 F.3d at 955.

While we are mindful of the generous pleading standards that apply to civil rights plaintiffs, "a liberal interpretation of a . . . civil rights complaint may not supply essential elements

1

2   of the claim that were not initially pled." *Pena v. Gardner*, 976

3
    F.2d 469, 471 (9th Cir. 1992) (quoting *Ivey v. Bd. of Regents*,
4

5   673 F.2d 266, 268 (9th Cir. 1982)). Chapman's complaint fails

6
    to  sufficiently  allege  the  essential  elements  of  Article  III
7

8   standing.  Although  Chapman  alleges  that  he  is  "physically

9
    disabled,"  and  that  he  "visited  the  Store"  and  "encountered
10

11  architectural barriers that denied him full and equal access," he

12
    never  alleges  what  those  barriers  were  and  *how  his  disability*
13

14  *was  affected  by  them  so  as  to  deny  him  the  "full  and  equal"*

15  *access  that  would  satisfy  the  injury-in-fact  requirement*  (i.e.,

16
    that  he  personally  suffered  discrimination  under  the  ADA  on
17

18  account of his disability). (emphasis added). (*Id.* at 954)

19
        Chapman leaves the federal court to guess which, if any, of
20

21  the alleged violations deprived him of the same full and equal

22
    access that a person who is not wheelchair bound would enjoy
23

24  when shopping at Pier One. Nor does he identify *how* any of

25
    the alleged violations threatens to deprive him of full and equal
26

27  access due to his disability if he were to return to the Store, or

28

how any of them deter him from visiting the Store due to his disability. (*Id*. 955) (emphasis added)

...

Because Chapman lacked standing at the outset of this litigation to assert the ADA claims, the district court should have dismissed them. See Fed. R. Civ. P. 12(b)(1); *Hays*, 515 U.S. at 747 (ordering the district court to dismiss the complaint for lack of standing). We therefore vacate the district court's grant of summary judgment, and remand with instructions to dismiss Chapman's ADA claim for lack of jurisdiction and for further proceedings consistent with this opinion.

Plaintiff, here, fails to allege sufficient facts to explain *how* his particular disability was affected by the alleged barriers. He merely alleges Plaintiff alleges he: "[W]ent to the Business on or about May 15, 2020 for the dual purpose of purchasing store items and to confirm that this public place of accommodation is accessible to persons with disabilities within the meaning federal and state law." Complaint ¶ 8; that "*[T]here were no designated parking spaces available* for persons with disabilities that complied with the

**POINTS AND AUTHORITIES TO MOTION TO DISMISS [FRCP 12(b)1]**
**Page 9 -**

1   2010 Americans with Disabilities Act Accessibility Guidelines ("ADAAG")

2   on May 15, 2020." *Id* ¶ 11.

3

4       In reading these allegations one is left with the impression that the

5   business provides no handicap space for customers using wheelchairs. But

6

7   that is clearly not the case here. Photographs A through F attached to this

8   pleading show that there is indeed a handicap parking space made available

9

10  to customers; that the parking space is sufficiently wide to accommodate a

11  specially adapted van; that the photograph clearly show the existence of an

12

13  access aisle, and that the crosshatched access aisle next to the handicap

14  parking space is wide enough to allow a van to deploy a ramp.

15

16      Yes there are technical violations of the access aisle. Yes, the access aisle

17  in its present form conforms to the 1994 Standard and not the 2010

18  standard. That is true. And yes, the 2010 standard requires that the access

19

20  aisle not exceed + or -2° in slope. But that deviation affects a very small

21  segment of wheelchair users, if that. Plaintiff does not explain how his

22

23  specific disability places him in that category.

24

25

26

27

28

**POINTS AND AUTHORITIES TO MOTION TO DISMISS [FRCP 12(b)1]**
**Page 10 -**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Chapman's Complaint, filed in 2004, (EXHIBIT A) was dismissed by the en banc panel - in 2011 - for the same reasons.

Whether attached to the complaint or listed within the complaint, Rutherford's complaint here sidesteps articulating a concrete and particularized injury. Plaintiff does not allege *how* his disability relates to the barriers, so as to deny him "full and equal" access. Plaintiff does not allege whether he actually experienced difficulty and *how*. Plaintiff's averments are just as insufficient as Chapman's was 15 years ago.

The central question is *how*: how was Plaintiff's disability affected by the alleged barriers so as to deny Plaintiff full and equal access?

Plaintiff does not allege *how* his disability relates to the alleged barriers so as to deny him the "full and equal" access. Plaintiff does not allege *how* he actually experienced difficulty.

The crucial and missing averment here is *how* this Plaintiff is denied full and equal access because of the minor variation of the slope of the access

**POINTS AND AUTHORITIES TO MOTION TO DISMISS [FRCP 12(b)1]**
**Page 11 -**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

aisle. After all, if Plaintiff is prepared to argue that he cannot negotiate a

slope as minor as the one present at the access aisle, then Plaintiff should be

prepared to explain how he is able to navigate a simple ramp, seen

everywhere, with an allowable slope of 8°.

    Defendant should not have to invest thousands in attorney's fees, by

having to propound written discovery, and take depositions, in order to

discover the specific remedial steps Garcia will require from Defendant in

order for Garcia to have full access to the facilities offered by the Chevron

gas station. One or two paragraphs clarifying these factual issues could help

settle the case early on.

    **c.** ***Skaff v. Meridien*** **(9th Cir. 2007) Has Been Relegated to the**

**Dustbin of History. Yet Some ADA Plaintiffs Cling to Its Outdated**

**Principles.**

    *Skaff v. Meridien,* 506 F.3d 832 is not the Standard for pleading ADA

cases. *Skaff* was decided in 2007 by two Circuit Judges: the Hon. Jerome

Farris and the Hon.Ronald M. Gould, and the Hon. Kevin Thomas Duffy,

District Judge, dissenting. *Chapman,* 631 F.3d 939, in contrast, was decided

en banc in 2011 by the Hon. Alex Kozinski, Chief Judge, the Hon. Mary M.

Schroeder, the Hon. Andrew J. Kleinfeld, the Hon. Barry G. Silverman, the Hon. Kim McLane Wardlaw, the Hon. Johnnie B. Rawlinson, the Hon. Richard R. Clifton, the Hon. Richard A. Paez, the Hon. Marsha S. Berzon, the Hon. Milan D. Smith, Jr. and the Hon. N. Randy Smith, Circuit Judges.

If the *Skaff* complaint were to be filed today, it too would be dismissed under the pleading standsrds established in *Chapman*. The plaintiff in *Skaff* just as the plaintiff in *Chapman*, and just as here, listed barriers, did not connect each to the plaintiff's disability, and did not explain how he was denied access.

**d. The ADA Is Not a Private Attorney General Statute. Plaintiff Has No Standing to Bring Suit on Behalf of Others.**

A disabled individual cannot vindicate the rights of disabled persons generally. The Attorney General is "the proper entity to bring such an action." 42 U.S.C. § 12188(b) ("Enforcement by Attorney General").

An ADA plaintiff may obtain an injunction against impending discrimination throughout a public accommodation, but this "does not transform the ADA into an open-ended private attorney general statute, because the scope of such an injunction is limited." *Chapman,* 631 F.3d at

953. This, "in no way relieves plaintiffs from the constitutionally imposed burden of demonstrating an injury-in- fact..." *Id*.

Pleading an injury-in-fact is necessary as no two disabled persons are alike. Some have strong shoulders, others have strong forearm and weak shoulders. Some are able to stand and walk for limited distances. Others are unable to even stand. Disabled persons generally use customized assistive devices. Hence, just because a plaintiff is a wheelchair user, for instance, does not mean that every section of the Americans with Disabilities Architectural Guidelines (ADAAG) that applies to wheelchair users is related to his particular disability. For instance, some wheelchairs are powerful enough to climb the steep streets of San Francisco. In contrast, users of manual wheelchairs will quickly wear out their shoulders covering a single block. Some wheelchairs have the ability to raise and lower the user's seat. Others don't. Users of motorized wheelchairs will hardly notice a five-degree cross-slope on a sidewalk. Users of manual wheelchairs, on the other hand, will struggle as they fight to keep their wheelchairs from sliding off the sidewalk. The upshot is this: the plaintiff, here, does not have Article III standing to bring suit on behalf of all wheelchair users, or to have all

Case 5:20-cv-01204-MWF-SP   Document 20-1   Filed 08/17/20   Page 15 of 18   Page ID #:88

wheelchair related barriers removed, just because he uses a wheelchair. He has standing only as to "barriers" related to his disability. For that reason alone he must allege injury-in-fact, he must relate his disability to an alleged barrier, and he must aver *how* he was denied access. He will not.

### f. The *Chapman* Standard Was Repeated in *Oliver*

*Oliver v. Ralphs Grocery Co.*, 654 F.3d 903 (9th Cir. 2011), decided six months after *Chapman*, reasserted *Chapman*'s holding that an ADA plaintiff must allege *how* a disabled person is deterred from visiting a facility, or *how* she is likely to experience an injury-in-fact if she were to visit a public place of accommodation:

> The jurisdictional allegations in Oliver's complaint are almost identical to those we found deficient in *Chapman*. Although Oliver's complaint stated that he had encountered barriers at the store and provided a list of alleged barriers, it did not specify which (if any) Oliver had personally encountered or explain "how his disability was affected by [any of] them so as to deny him . . . 'full and equal' access" to the store. *Id.* at 954. Thus, Oliver's complaint, like the complaint in Chapman, was

2067

**POINTS AND AUTHORITIES TO MOTION TO DISMISS [FRCP 12(b)1]**
**Page 15 -**

"jurisdictionally defective." *Id*. at 907.

*Oliver* mandates that a plaintiff provide notice of the existence of each

barrier in a complaint. *Id.* 654 F.3d, 909.

> [For] purposes of Rule 8, a plaintiff must identify the
>
> barriers that constitute the grounds for a claim of discrimination
>
> under the ADA in the complaint itself; a defendant is not
>
> deemed to have fair notice of barriers identified elsewhere.
>
> Therefore, the district court did not err in refusing to consider
>
> the barriers that Oliver identified only in his expert report. *Id.* at
>
> 907.

A plaintiff must identify each barrier that allegedly denied plaintiff equal

access, and plead *how* plaintiff's disability was affected by each of the

alleged barrier(s) so as to deny the plaintiff full and equal access. A simple

paragraph providing further explanation will suffice. A court and defendant

(s) should not have to guess, or assume, what those are.

At this writing, the Court and Defendant here are left in the dark as to

what Plaintiff was unable to access, that an able-bodied patron would have

been able to; and *how* Plaintiff was discriminated. Plaintiff's complaint,

**POINTS AND AUTHORITIES TO MOTION TO DISMISS [FRCP 12(b)1]**
**Page 16 -**

therefore, is just as jurisdictionally defective as Chapman's was in 2004. Plaintiff must be dismissed.

### III. CONCLUSION

ADA accessibility complaints are principally brought against a small minority-owned businesses, such as restaurants and auto repair shops. These small businesses would benefit greatly from having clearer allegations. The goal of the ADA, after all, is to effect the efficient remediation of property that may not comply with the ADAAG. In line with this goal, complaints should allege what these owners need to have done to make their respective businesses accessible to a plaintiff.

An additional few minutes' investment is all a plaintiff's attorney needs to draft a clearer complaint. In contrast, the cost of having to "flesh out" details in discovery is exponentially higher. Vaguely written discovery responses often result in costly motions to compel, and a deposition will cost each side at least eight hours in time in preparation and attendance, notwithstanding the cost of a transcript. Therefore, an miniscule investment on the part of a plaintiff's attorney will likely spare the litigants thousands in fees.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Asking a plaintiff to clarify his particular injury and how it is related to his disability does not place an undue burden on a plaintiff. Not doing so, on the other hand, results in protracted litigation, a burden on the courts. Not doint so solely benefits the handful of firms, and their attorneys, who file these cases on an industrial scale.

For all the foregoing reasons Defendants' Defendants' Motion to Dismiss should be granted, as Plaintiff has failed to allege sufficient facts establishing Article III standing.

Respectfully submitted:

Date: 8/17/2020

Ara Sahelian, Esq.
SAHELIAN LAW OFFICES

2067